## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

CHARLES SMITH,

     Petitioner,

v.                                                    Case No. 8:20-cv-1150-VMC-JSS

SECRETARY, DEPARTMENT
OF CORRECTIONS,

     Respondent.

_____/

## ORDER

     Charles Smith, a Florida prisoner, filed an amended petition for writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 9.) Respondent filed a response opposing the amended petition. (Doc. 13.) Smith filed a reply. (Doc. 20.) Upon consideration, the amended petition is **DENIED**.

## I.   Procedural History

     A state-court jury convicted Smith and his codefendant Bryce Moore of robbery with a firearm. (Doc. 8-3, Ex. 33, pp. 700-01.) The state trial court sentenced Smith to life imprisonment as a prison releasee reoffender. (Doc. 8-4, Ex. 34.) The state appellate court *per curiam* affirmed the conviction. (*Id.*, Ex. 39.) Smith then sought postconviction relief under Florida Rule of Criminal Procedure 3.850. (*Id.*, Exs. 40, 41.) The state trial court denied Smith's claims, and the state appellate court *per curiam* affirmed the denial of relief. (*Id.*, Ex. 42; Doc. 8-5, Exs. 44, 48.)

1

## II.   __Facts; Trial Testimony__[1]

On the evening of October 25, 2011, Paul Constable and Nick Bowers visited two bars in St. Petersburg, Florida. Over the course of the evening, Constable consumed approximately ten drinks; Bowers drank more. The pair left the second bar at 3:00 a.m. and headed to Bowers's house.

Constable and Bowers parked outside the residence in Bowers's car. Constable was in the driver's seat, and Bowers was in the passenger seat. Two men, later identified as Smith and Moore, approached the passenger side of the car. Moore "swept around" the back of the car and walked up to the driver's side. (Doc. 8-3, Ex. 30, p. 63.) Smith and Moore offered to sell marijuana to Constable and Bowers; they declined the offer. Bowers noticed that Smith was running a "police scanner" application on his cell phone. (*Id.*, Ex. 32, p. 405.) Moore was wearing black, "football-style" gloves. (*Id.*, Ex. 30, p. 68.)

Constable and Bowers felt threatened because the two men would not leave. Constable lifted his shirt, showed his licensed firearm to Moore, and said, "[W]e're not going to have any problems." (*Id.*, p. 69.) Soon after, Bowers opened the passenger door and began vomiting on the ground. Constable got out and walked around the back of the car to check on Bowers.

At this point, Moore asked Constable for a lighter. Constable walked over to his truck, which was parked nearby, and retrieved a box of matches from the glove box.

---

[1] This summary is based on the trial transcript.

Smith and Moore followed Constable to the truck. Constable handed the box to Moore, who took a match and returned the box. Constable put the matches back in the glove box, turned around, and saw Smith pointing a gun in his face. Smith was wearing a black hoodie with white "marijuana leaves" printed "all over" it. (*Id.*, p. 75.) Smith told Constable "something along the lines of, [You're] being robbed." (*Id.*, p. 77.) Constable grabbed the gun with his right hand. Meanwhile, Constable and Moore "hand wrestl[ed]" over the gun in Constable's holster. (*Id.*, p. 78.) Within seconds, Smith's gun "went off," and Constable's right hand was cut by the weapon's "slide." (*Id.*, pp. 80-81.) Moore grabbed Constable's gun, and Smith and Moore fled the scene. Constable and Bowers went to Bowers's house, where Constable called 911.

A few minutes later, law enforcement responded to the scene. Sgt. James Haley observed a man, later identified as Smith, jump out of some bushes nearby and run away. Sgt. Haley relayed this information over the radio. Officer Scott Pierce, Jr. heard the call and saw Smith suddenly walk out from behind a house. Officer Pierce took Smith into custody and searched the backyard where Smith had been hiding. Next to an air conditioner, Officer Pierce found a hoodie "with marijuana symbols on it, a screwdriver, and a key chain with a flashlight." (*Id.*, p. 185.)

Law enforcement separately took Constable and Bowers to a parking lot for a show-up identification. Constable identified Smith as the man who had pointed a gun at him. Bowers identified Smith as the man who had been standing by the passenger-side window. Several days later, law enforcement provided a photo-pack to Constable,

who identified Moore as the "gentleman . . . who robbed [him] of [his] weapon." (*Id.*, p. 93.) Constable was "100-percent" certain of this identification. (*Id.*)

During a recorded jail call, Smith asked his wife to "move [his] truck," which was parked near the scene of the robbery. (*Id.*, Ex. 31, p. 293.) At trial, Smith's wife testified that (1) on the day of the robbery, she had seen Smith and Moore "passing around a gun," (2) Smith owned "several" jackets printed with marijuana leaves, and (3) Smith had asked her to buy him a gun the day before he was arrested. (*Id.*, pp. 295-99.)

Smith and Moore were tried together. Moore testified that, after returning the matches to the glove box, Constable pulled a gun on Smith and said, "Will there be a problem?" (*Id.*, Ex. 33, p. 532.) According to Moore, Smith responded by pulling out his gun, which Constable tried to grab. Moore denied reaching for Constable's gun. Instead, he claimed he was only "trying to get them to put their guns down." (*Id.*, p. 533.) Moore stated that, when the gun fired, he fled to his mother's house. Smith did not testify at trial.

III.   <u>**Standards of Review**</u>

A.   **AEDPA**

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief can be granted only if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) provides

that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694; *see also Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was

5

an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

The state appellate court affirmed Smith's conviction, as well as the denial of postconviction relief, without discussion. These decisions warrant deference under § 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir. 2002). When a state appellate court issues a silent affirmance, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

## B.    Ineffective Assistance of Counsel

Smith alleges ineffective assistance of trial counsel. Ineffective-assistance-of-counsel claims are analyzed under the test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a showing of deficient performance by counsel and resulting prejudice. *Id*. at 687. Deficient performance is established if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id*. at 690. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*.

Smith must show that counsel's alleged error prejudiced the defense, because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."

*Id.* at 691. To demonstrate prejudice, Smith must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Obtaining relief on a claim of ineffective assistance of counsel is difficult on federal habeas review because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (internal quotation marks and citations omitted); *see also Burt v. Titlow*, 571 U.S. 12, 15 (2013) (stating that this doubly deferential standard of review "gives both the state court and the defense attorney the benefit of the doubt"). "The question [on federal habeas review of an ineffective-assistance claim] 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

## C.     Exhaustion of State Remedies; Procedural Default

A federal habeas petitioner must exhaust his claims in state court before presenting them in his federal habeas petition. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). The exhaustion requirement is satisfied if the petitioner fairly

presents his claim in each appropriate state court and alerts that court to the federal nature of the claim. *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003). To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). A petitioner demonstrates prejudice by showing that "there is at least a reasonable probability that the result of the proceeding would have been different" absent the constitutional violation. *Henderson*, 353 F.3d at 892.

## IV.   <u>Discussion</u>

### A.   **Ground One, Sub-Claim A**

Smith contends that trial counsel provided ineffective assistance by failing to impeach Constable at trial with "false testimony" he offered at the suppression hearing. (Doc. 9, p. 5.) Before trial, Smith moved to suppress Constable's and Bowers's

8

identification of him as one of the robbers. According to Smith, Constable testified at the suppression hearing that "he drank one to three beers on the night of the" robbery. (*Id.*) At trial, however, Constable stated that he consumed approximately ten drinks that night. Smith maintains that counsel was ineffective for failing to "impeach [] Constable's trial testimony with the suppression hearing testimony." (*Id.*, p.7.)

The state court denied this claim:

Defendant claims that, when Mr. Constable testified at trial to drinking ten drinks on the night of the incident, counsel should have impeached Mr. Constable with his testimony from the pretrial motion to suppress hearing, where Mr. Constable testified to drinking one to three beers. Counsel may impeach a witness by "introducing statements of the witness which are inconsistent with the witness's present testimony." § 90.608(1), Fla. Stat. (2013).

In its response, the State contends that counsel was not deficient for failing to impeach Mr. Constable's trial testimony of drinking ten beers on the night of the incident with the fact that he testified to drinking only one to three beers at the motion to suppress hearing because Mr. Constable did not give conflicting testimony. The State notes that no one asked Mr. Constable, at the motion to suppress hearing, how many total drinks he had total on the night of the incident. Additionally, the State notes that counsel did attempt to impeach Mr. Constable at trial on the number of total drinks he had, but Mr. Constable clarified his testimony and explained that he had four to five beers at the second bar he visited that night, not four to five drinks total. Mr. Constable clarified that he had four or five beers at each of the two bars he visited that night, for a total of about ten beers. Mr. Constable's trial testimony was, notably, consistent with prior deposition testimony that he drank ten or eleven beers the entire night.

The Court is persuaded by the State's response and finds that counsel was not deficient for failing to impeach Mr. Constable regarding his testimony on the total number of drinks he drank on the night of the incident because Mr. Constable did not testify inconsistently [so as] to give counsel grounds to impeach his testimony. When counsel did attempt to impeach Mr. Constable's trial testimony with his motion to suppress testimony, Mr. Constable explained that he had about four or

five beers at each bar, not four or five beers the entire night. As the jury was free to either believe or disbelieve Mr. Constable's explanation, there is no reasonable probability that the outcome of these proceedings would have been different if counsel had tried to further impeach Mr. Constable, especially considering that the State could have introduced Mr. Constable's prior consistent deposition testimony in rebuttal. Therefore, [this claim] fails both prongs of *Strickland* and [] is denied.

(Doc. 8-5, Ex. 44, pp. 3-4 (record citations omitted).)

The state court reasonably rejected Smith's ineffective-assistance claim. As the state court recognized, Constable's trial testimony did not contradict his testimony at the suppression hearing. Constable testified at the suppression hearing that he and Bowers visited two bars on the night of the robbery. Constable stated that he had "one to three beers" at the first bar. (Doc. 8-2, Ex. 21, p. 24.) He then testified that he "might have had" one shot at the second bar. (*Id.*, p. 26.) Notably, however, Constable was not asked whether he had consumed beers at the second bar, nor was he asked to estimate the total number of drinks he had that evening. Accordingly, Constable's trial testimony—that he consumed approximately ten beers the night of the robbery—was not inconsistent with his suppression-hearing testimony. Because Constable could not have been impeached on this basis, the state court correctly rejected Smith's ineffective-assistance claim. *See Bolender v. Singletary*, 16 F.3d 1547, 1573 (11th Cir. 1994) ("[I]t is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance."); *Stratis v. Sec'y, Dep't of Corr.*, No. 8:16-cv-141-CEH-AAS, 2019 WL 1330835, at *6 (M.D. Fla. Mar. 25, 2019) ("[C]ounsel was not ineffective in failing to impeach [state witness] on this issue because her trial testimony

was not inconsistent with her deposition testimony."). Ground One, Sub-Claim A is denied.

### B.    Ground One, Sub-Claim B

Smith contends that trial counsel was ineffective for not objecting or moving for a mistrial when Constable "false[ly]" testified at trial that he consumed approximately ten drinks on the night of the robbery. (Doc. 9, p. 10.) The state court rejected this claim:

> Defendant claims that counsel should have objected to Mr. Constable's trial testimony because he testified, at trial, to drinking more drinks than he admitted to drinking during a pretrial motion to suppress hearing. Essentially, Defendant contends that counsel should have objected on the basis that the witness'[s] present testimony was inconsistent with the witness'[s] prior testimony. The Florida Evidence Code recognizes numerous legal objections, but no portion of the Florida Evidence Code recognizes a legal objection on the grounds that a witness'[s] present testimony is inconsistent with a witness'[s] prior testimony. *See generally* §§ 90.612(1), 90.104(2), 90.901, 90.952, 90.612(2), 90.609(2), 90.604, 90.701, 90.605, 90.403, 90.802, 90.404, Fla. Stat. (2013) (providing legal objections to testimony that is irrelevant, ambiguous, argumentative, asked and answered, assumes a fact not in evidence, confusing, consists of hearsay, is speculative, is unfairly prejudicial, or provides an improper opinion, among other objections).

> Accordingly, if counsel had objected to Mr. Constable's testimony because he recognized and believed the testimony to be false, the objection would have been meritless because inconsistent testimony is not grounds for a legal objection. Counsel cannot be ineffective, nor can the Defendant be prejudiced, when counsel fails to raise a meritless objection. *See Ferrell v. State*, 29 So. 3d 959, 976 (Fla. 2010) (noting that counsel cannot be found ineffective for failing to raise a meritless objection). The Court finds that [this claim] fails both prongs of *Strickland* and [] is, therefore, denied.

> . . .

Next, Defendant claims that counsel should have filed a motion for a mistrial when Mr. Constable testified, at a pretrial motion to suppress hearing, that he had one to three beers on the night of the incident but testified, during trial, to drinking ten drinks on the night of the incident. When alleging that counsel was ineffective for failing to file a motion, a defendant must demonstrate that the motion would have had merit. *See Ferrell v. State*, 29 So. 3d 959, 976 (Fla. 2010) (stating that counsel "cannot be deemed ineffective for failing to raise a meritless argument"). The Court finds [this claim] to be facially sufficient as to both prongs of *Strickland*.

A motion for mistrial "should be granted only when necessary to insure that a defendant receives a fair trial." *Gorby v. State*, 630 So. 2d 544, 547 (Fla. 1993). The Court should grant a mistrial only when an error is so prejudicial as to vitiate the entire trial and cannot be corrected through other means. *See Fletcher v. State*, 168 So. 3d 186, 207 (Fla. 2015).

The Court cannot conclude that counsel was ineffective for failing to move for a mistrial under the facts of this case. When a witness provides conflicting testimony, cross-examination provides the Defendant with the opportunity to rectify the error through lesser means and correct the error to ensure a fair trial. *See* § 90.608(1), Fla. Stat. (2013). Accordingly, Mr. Constable's testimony did not amount to the kind of extremely prejudicial testimony that had the potential to vitiate the entire outcome of the trial. The Court finds that, under the facts and circumstances of this case, a motion for mistrial on the grounds Defendant describes would have been a meritless motion. Counsel cannot be ineffective, nor can the Defendant be prejudiced, when counsel fails to raise a meritless objection. *See Ferrell v. State*, 29 So. 3d at 976. Therefore, the Court finds that [this claim] fails both prongs of *Strickland* and [] is, therefore, denied.

(Doc. 8-5, Ex. 44, pp. 3-5 (record citations omitted).)

The state court reasonably rejected Smith's ineffective-assistance claim. "[A]lthough the issue of ineffective assistance . . . is one of constitutional dimension," a court "must defer to the state's construction of its own law when the validity of the [ineffective-assistance] claim . . . turns on state law." *Pinkney v. Sec'y, DOC*, 876 F.3d 1290, 1295 (11th Cir. 2017). Here, whether a mistrial would have been granted—and

whether an objection based on inconsistent testimony would have been sustained—are matters of Florida law. *See Fernandez v. Sec'y, Dep't of Corr.*, No. 8:16-cv-2565-CEH-SPF, 2019 WL 3958269, at *8 (M.D. Fla. Aug. 22, 2019) ("Whether a motion would have succeeded under Florida's standard for granting a mistrial is a question of state law."); *Crum v. Crews*, No. 3:11-cv-480-RV-CJK, 2013 WL 4780129, at *30 (N.D. Fla. Sept. 5, 2013) ("Since the state courts have already ruled as a matter of state law that the evidentiary objection would have been properly overruled, that binding determination of state law means there cannot be attorney error or prejudice for failing to argue the objection."). Because the ineffective-assistance claim turns on issues of state law, this Court is bound by the state court's construction of that law. *See Herring v. Sec'y. Dep't of Corr.*, 397 F.3d 1338, 1354-55 (11th Cir. 2005) ("The Florida Supreme Court already has told us how the issues would have been resolved under state law had [counsel] done what [the appellant] argues he should have done. . . . It is a fundamental principle that state courts are the final arbiters of state law, and federal courts should not second-guess them on such matters."). Accordingly, Ground One, Sub-Claim B is denied.

## C.    Ground One, Sub-Claim C

Smith argues that the prosecution committed a *Giglio*[2] violation by "failing to correct" Constable's allegedly false statement at the suppression hearing that he

---

[2] *Giglio v. United States*, 405 U.S. 150 (1972).

consumed "one to three beers on the night of the" robbery. (Doc. 9, p. 5.) The state

court rejected this claim:

> Defendant claims that the State committed a *Giglio* violation during trial
> by offering testimony from Mr. Constable that he had ten drinks, when
> he testified at the pretrial motion to suppress hearing that he had one to
> three drinks. To state a claim under *Giglio*, the Defendant must allege that
> "(1) the testimony given was false; (2) the prosecutor knew the testimony
> was false; and (3) the statement was material." *See Guzman v. State*, 868
> So. 2d 498, 505 (Fla. 2003). A statement is material under *Giglio* "if there
> is any reasonable likelihood that the false testimony could have affected
> the judgment of the jury." *Id.* at 506.
>
> In its response, the State contends that [this claim] fails each prong of
> *Giglio*. While the Defendant contends that Mr. Constable lied when he
> testified to drinking one to three beers on the night of the incident, Mr.
> Constable testified that he had one to three beers at the first bar that he
> went to, not the entire night. [Mr. Constable's] trial testimony was not
> inconsistent with his motion to suppress testimony, as no one ever asked
> Mr. Constable, during the motion to suppress, how many beers total he
> drank that night. Accordingly, the State contends that there is no basis
> upon which to find that the testimony was false. Additionally, noting that
> Mr. Constable testified consistently at trial and during his deposition, the
> State contends that there is no basis upon which to suggest that the
> prosecutor knew that the testimony was false. The Court is persuaded by
> the State's response and finds that [this claim] does not amount to a *Giglio*
> violation.

(Doc. 8-5, Ex. 44, pp. 5-6 (record citations omitted).)

The state court reasonably rejected Smith's *Giglio* claim. "To establish a Giglio

claim, a habeas petitioner must prove: (1) the prosecutor knowingly used perjured

testimony or failed to correct what he subsequently learned was false testimony; and

(2) such use was material, *i.e.*, that there is any reasonable likelihood that the false

testimony could have affected the judgment." *Trepal v. Sec'y, Fla. Dep't of Corr.*, 684

F.3d 1088, 1107-08 (11th Cir. 2012). "In the *Giglio* context, the suggestion that a

14

statement may have been false is simply insufficient; the defendant must conclusively show that the statement was actually false." *Maharaj v. Sec'y for Dep't of Corr.*, 432 F.3d 1292, 1313 (11th Cir. 2005). "The use of testimony that is inconsistent with a witness's prior testimony or that of a co-defendant does not suffice to show that the proffered testimony was false." *United States v. Foskey*, 570 F. App'x 878, 881 (11th Cir. 2014).

Smith's *Giglio* claim rests on a mischaracterization of the testimony Constable gave at the suppression hearing. Contrary to Smith's assertion, Constable did not testify at the hearing that he consumed only one to three beers on the night of the robbery. Instead, he testified that, at the first of two bars he visited that night, he had one to three beers. At the suppression hearing, Constable was not asked—and thus did not testify to—the total number of drinks he consumed. Accordingly, Smith failed to "conclusively show that [Constable's] statement was actually false." *Maharaj*, 432 F.3d at 1313. Moreover, even if Constable had testified inconsistently at the suppression hearing and at trial, that inconsistency would "not suffice to show that the proffered testimony was false." *Foskey*, 570 F. App'x at 881. For these reasons, the state court correctly rejected Smith's *Giglio* claim. Ground One, Sub-Claim C is denied.

### D.    Ground Two, Sub-Claim A

Smith contends that trial counsel was ineffective for failing to present a "firearms expert" at trial. (Doc. 9, p. 13.) Smith notes that Constable "had an injury to his right hand that he claimed occurred from the discharge of [Smith's] firearm during the struggle by holding the barrel of the gun." (*Id.*) According to Smith, a firearms expert "could have testified" that Constable's injury could not "have occurred

15

in the manner [described] by [Constable]," and was instead "consistent with pulling his gun [out] with his right hand." (*Id.*, pp. 13-14.)

The state court denied this claim:

Defendant contends that a firearms expert could have discredited Mr. Constable's version of events by testifying that the injury Mr. Constable said he received on his right hand from the discharge of the firearm could not have possibly occurred in the manner Mr. Constable described. . . . Defendant concludes that, if counsel had retained [a firearms expert], the outcome of the trial would have been different.

. . .

When alleging that counsel was ineffective for failing to call an expert witness, defendants must allege why counsel needed to hire the expert or explain how that expert's testimony would have rebutted a material fact at trial. *See State v. Lucas*, 183 So. 3d 1027, 1032-33 (Fla. 2016) (explaining that postconviction claims regarding counsel's failure to call an expert witness must "allege sufficient facts concerning the necessity of the uncalled expert and the testimony the expert could have provided at trial.").

. . .

The State claims that counsel was not deficient for failing to call a firearms expert and contends that there is no reasonable probability that the outcome of the proceedings would have been different if counsel had called a firearms expert. While the Defendant concludes that a firearms expert would have been useful to show that [] Mr. Constable caused his own hand injury by pinching his hand on the slide of his own gun because he was unfamiliar with firearms, the State notes that Mr. Constable testified that he was very familiar with firearms. The State further contends that a firearm expert's proposed testimony would have been inconsistent with the testimony provided by Officer [Matthew] Kirchgraber and co-defendant Bryce Moore. Officer Kirchgraber testified that the injury on Mr. Constable's hand is consistent with getting caught in the slide of a firearm, but admitted that he could only assume that it was caused by the Defendant's gun because that is what Mr. Constable told him. Codefendant Moore, however, testified that Mr. Constable and the Defendant struggled over the Defendant's gun. The State concludes, therefore, that counsel was not deficient for failing to call a firearms

16

expert because there was nothing incredibly difficult to understand about the issue of whose gun caused the injury to Mr. Constable's hand. Moreover, the State concludes that there is no reasonable probability that the outcome of the proceedings would have been different if counsel had called a firearms expert, given the facts and circumstances which implicated the Defendant in this robbery.

The Court is persuaded by the State's response and finds that counsel was not deficient for failing to call a firearms expert on the grounds raised by the Defendant. Moreover, there is no reasonable probability that the outcome of these proceedings would have been different if counsel had called a firearms expert to testify to whose gun injured Mr. Constable's hand because there is overwhelming evidence demonstrating that the Defendant robbed Mr. Constable. Both Mr. Constable and Mr. Bowers identified the Defendant as the robber and noted that the robber was wearing a distinguishable marijuana leaf jacket. The Defendant was found hiding near a marijuana leaf jacket and the Defendant's wife testified that the Defendant owns a marijuana leaf jacket, was wearing it on the night of the robbery, and that she saw the Defendant passing around a gun with his codefendant. The Defendant's wife further testified that the Defendant had a police scanner on his cell phone and Mr. Bowers testified that he saw the Defendant using a police scanner before the Defendant robbed Mr. Constable. Finally, the Defendant made an incriminating phone call from the jail to his wife, asking his wife to move his truck out of the Woodlawn neighborhood near where a suspicious vehicle had been left during the time of the robbery. Therefore, [this claim] is denied.

(Doc. 8-5, Ex. 44, pp. 6-8 (record citations omitted).)

The state court reasonably rejected Smith's ineffective-assistance claim for lack of prejudice. To show prejudice, Smith must establish a "reasonable probability that, but for counsel's [failure to present a firearms expert], the outcome at trial would have been different." *Reed v. Sec'y, Fla. Dep't of Corr.*, 767 F.3d 1252, 1261 (11th Cir. 2014). Smith failed to make the required showing. As the state court explained, the prosecution presented overwhelming evidence of Smith's guilt. Accordingly, even if a firearms expert had testified that the injury on Constable's hand came from pulling out

his own gun (rather than wrestling over Smith's), there is no "reasonable probability" that the jury would have acquitted Smith. *See Solomon v. Kemp*, 735 F.2d 395, 402 (11th Cir. 1984) (holding that "petitioner ha[d] failed to show that his trial counsel's failure to hire expert witnesses worked to his 'actual prejudice'" because "[t]he evidence against petitioner was overwhelming"); *Odoni v. United States*, No. 20-13813-G, 2021 WL 1534208, at *2 (11th Cir. Mar. 22, 2021) (affirming denial of ineffective-assistance claim because, "[e]ven assuming his trial counsel's failure to retain experts and investigators amounted to deficient performance, [petitioner] ha[d] not shown in any detail what information would have been uncovered and that such information would have negated the overwhelming trial evidence supporting his convictions").

Moreover, Smith has not presented any evidence that a firearms expert would have testified as he suggests. Instead, he simply speculates that such an expert would opine that Constable's injury could not "have occurred in the manner [described] by [Constable]" and was instead "consistent with pulling his gun [out] with his right hand." (Doc. 9, pp. 13-14.) Such speculation is insufficient to establish prejudice under *Strickland*. *See Holt v. Sec'y, Fla. Dep't of Corr.*, 489 F. App'x 336, 338 (11th Cir. 2012) (holding that state court reasonably rejected *Strickland* claim based on failure to retain expert because "[i]t [was] speculative that an expert witness would in fact have testified" the way petitioner wanted). Because the state court reasonably rejected Smith's ineffective-assistance claim, Ground Two, Sub-Claim A is denied.

18

### E.    Ground Two, Sub-Claim B

Smith argues that trial counsel rendered ineffective assistance by failing to call an "alcohol intoxication expert." (Doc. 9, p. 14.) According to Smith, such an expert could have testified that "people inherently downplay[] the number of drinks they ha[ve]," and that alcohol affects "judgment" and "memory of events." (*Id.*) Alternatively, Smith faults counsel for not calling Officer Gosnell as an expert witness on intoxication.[3] Smith contends that Officer Gosnell "could have testified that alcohol skews memory of events and causes problems with a person's judgment[,] and that intoxicated civilians tend to falsify how much they have been drinking to law enforcement to downplay their level of intoxication." (*Id.*, p. 15.) In Smith's view, such testimony would have called into question the victims' ability to identify him as one of the robbers.

The state court rejected this claim:

> The State claims that counsel was not deficient for failing to call an intoxication expert and contends that there is no reasonable probability that the outcome of the proceedings would have been different if counsel had called an intoxication expert. The State notes that both victims admitted that they were intoxicated on the night of the incident, counsel thoroughly cross-examined them on this issue, and that being intoxicated is not a circumstance which requires an expert to convey understanding to a jury. The State concludes, therefore, that counsel was not deficient for failing to call an intoxication expert and that there is no reasonable probability that the outcome of these proceedings would have been different if counsel had called an intoxication expert. The Court is persuaded by the State's response and finds that [this claim] fails both prongs of *Strickland*.

---

[3] Officer Gosnell was the first officer to make contact with the victims following the robbery. He worked in the "DUI unit" of the St. Petersburg Police Department. (Doc. 8-2, Ex. 21, pp. 31-35.)

(Doc. 8-5, Ex. 44, p. 8 (record citations omitted).)

The state court reasonably rejected Smith's ineffective-assistance claim. As the state court explained, both victims admitted at trial that they were intoxicated on the night of the robbery. In addition, Constable testified that he consumed approximately ten beers, and Bowers admitted to drinking more than that. Thus, even without expert testimony on the subject, the jury was in a position to consider the victims' impairment in weighing their credibility and their ability to make a proper identification. *See Rushing v. Sec'y of Fla. Dep't of Corr.*, No. 3:16-cv-112-TJC-JBT, 2019 WL 1117042, at *21 (M.D. Fla. Mar. 11, 2019) (rejecting ineffective-assistance claim based on failure to call intoxication expert because "[t]he witnesses all testified as to the amount of drugs and/or alcohol they consumed that night and their levels of intoxication"). Furthermore, an expert was not required to convey to the jury that the victims' intoxication might have affected their ability to properly identify the suspects. Indeed, "the effects of excess alcohol consumption are not necessarily outside the ken of the average juror." *Grayson v. Thompson*, 257 F.3d 1194, 1221 (11th Cir. 2001). Because the state court correctly concluded that Smith met neither prong of *Strickland*, Ground Two, Sub-Claim B is denied.

## F.    Ground Three

Smith contends that trial counsel was ineffective for failing to object to a *Richardson*[4] violation that allegedly occurred when the prosecution attempted to

---

[4] *Richardson v. State*, 246 So.2d 771 (Fla. 1971).

qualify Officer Kirchgraber as a firearms expert without prior notice. Under Florida law, "[o]nce the court has notice of a discovery violation, the court is obliged to conduct a *Richardson* hearing." *Chamberlain v. State*, 254 So. 3d 1027, 1031 (Fla. 4th DCA 2018). "If the court finds a discovery violation, it must determine whether it was willful or inadvertent, substantial or trivial, and whether the aggrieved party has suffered prejudice." *Id.* Smith claims that, although counsel objected to Officer Kirchgraber's qualifications as an expert, counsel did not object to the prosecution's "fail[ure] to provide proper notice of the intent to qualify Officer Kirchgraber as an expert witness on firearms." (Doc. 9, pp. 18-19.)

> The state court rejected this claim:

> Defendant contends that the State committed a *Richardson* violation by failing to notify him that it would call Officer Kirchgraber as a firearms expert. Defendant further contends that counsel was ineffective for failing to object to the *Richardson* violation, and counsel should have objected to Officer Kirchgraber's qualifications to testify as an expert witness. Defendant concludes that, had counsel objected to Officer Kirchgraber's testimony on the grounds Defendant now raises, a reasonable probability exists that the outcome of the trial would have been different.

> In its response, the State contends that it did not commit a *Richardson* violation because defense counsel knew that Officer Kirchgraber would be testifying at trial. The State further contends that counsel is not deficient for failing to object because counsel did actually object when the State solicited testimony that counsel felt was outside the scope of Officer Kirchgraber's training and experience. The State finally contends that any *Richardson* objection would have been denied as meritless because counsel knew that part of the State's theory of the case was that the slide of the Defendant's gun injured Mr. Constable's hand.

> The Court is persuaded by the State's response and finds that [this claim] fails the first prong of *Strickland* because counsel did actually object to the detective testifying as to whether Mr. Constable could have [been] injured in a struggle for the Defendant's gun. Moreover, there is no

reasonable probability that the outcome of the proceedings would have been different if counsel had more vigorously objected because the State's limited questioning of [Officer] Kirchgraber did not amount to a *Richardson* violation. Therefore, [this claim] fails both prongs of *Strickland* and [] is denied.

(Doc. 8-5, Ex. 44, pp. 8-9 (record citations omitted).)

The state court reasonably rejected Smith's ineffective-assistance claim. As explained above, a court "must defer to the state's construction of its own law when the validity of [an ineffective-assistance] claim . . . turns on state law." *Pinkney*, 876 F.3d at 1295. Here, Smith's ineffective-assistance claim turns on a question of Florida law—namely, whether a *Richardson* violation occurred when the prosecution presented Officer Kirchgraber as an expert witness. The state court answered that question in the negative, concluding that "the State's limited questioning of [Officer] Kirchgraber did not amount to a *Richardson* violation." (Doc. 8-5, Ex. 44, p. 9.) That determination binds this Court. *See Herring*, 397 F.3d at 1354-55 ("The Florida Supreme Court already has told us how the issues would have been resolved under state law had [counsel] done what [the appellant] argues he should have done. . . . It is a fundamental principle that state courts are the final arbiters of state law, and federal courts should not second-guess them on such matters."); *Torres v. Sec'y, Dep't of Corr.*, No. 8:18-cv-2201-VMC-JSS, 2021 WL 3079700, at *10 (M.D. Fla. July 21, 2021) ("To the extent that [petitioner's ineffective-assistance] claim relies on an application of *Richardson* and Florida's discovery rules, this Court must defer to the state court's conclusion that a

motion for a *Richardson* hearing would have lacked merit."). Because the state court reasonably rejected Smith's ineffective-assistance claim, Ground Three is denied.[5]

### G.   Ground Four

Smith argues that trial counsel rendered ineffective assistance by "failing to properly litigate the motion to suppress" the victims' identification of him. (Doc. 9, p. 21.) Specifically, Smith contends that counsel (1) failed to question Constable and Bowers about Smith's "teardrop tattoos," (2) failed to impeach Constable about "how much [he] drank" on the night of the robbery, and (3) failed to object to the prosecution's decision to wait until after the suppression hearing to reveal the results of DNA testing on the marijuana-leaf hoodie. (*Id.*)

Following an evidentiary hearing, the trial court denied the motion to suppress. The court acknowledged that "[m]ost" show-up identifications are "suggestive," and that the "question is whether this [one] was unnecessarily so."[6] (Doc. 8-2, Ex. 21, p. 85.) The court concluded that there was not "a substantial likelihood of

---

[5] To the extent Smith alleges that the trial court violated his constitutional rights by failing to conduct a *Richardson* hearing, such a claim is not cognizable on federal habeas review. *See Ray v. Sec'y, Fla. Dep't of Corr.*, No. 3:16-cv-1112-TJC-JBT, 2023 WL 2374197, at *15 (M.D. Fla. Mar. 6, 2023) ("[W]hether the trial court failed to conduct a *Richardson* hearing is a matter of state law and is not cognizable on federal habeas corpus review."); *Stoddart v. Sec'y, DOC*, No. 2:14-cv-182-JES-CM, 2017 WL 1196569, at *9 (M.D. Fla. Mar. 31, 2017) ("Whether the trial court violated *Richardson* by failing to hold a hearing on the alleged discovery violation is a matter of state law and is not cognizable on federal habeas corpus review.").

[6] "A show-up identification occurs when a suspect is individually presented to a victim for identification . . . ." *Walker v. Scully*, No. 90-cv-3328-SJ, 1992 WL 220002, at *6 (E.D.N.Y. Aug. 25, 1992). When evaluating whether a show-up is impermissibly suggestive, "[t]he test promulgated by the United States Supreme Court and adopted by [the Florida Supreme] Court is twofold: (1) did the police employ an unnecessarily suggestive procedure in obtaining an out-of-court identification; and (2) if so, considering the totality of the circumstances, did the suggestive procedure give rise to a substantial likelihood of irreparable misidentification." *Walton v. State*, 208 So. 3d 60, 65 (Fla. 2016).

misidentification[]" because (1) the victims "had a substantial opportunity to view [Smith]" during the encounter, which lasted between "five and fifteen minutes"; (2) Constable's "degree of attention" to Smith was "high," although Bowers's was "less so" because of his intoxication; (3) the victims' descriptions of the robbers, although vague in some respects, included their "size," race, and the fact that Smith was wearing a marijuana-leaf hoodie and Moore was wearing gloves; (4) the victims were "positive" that they had correctly identified Smith; and (5) "the length of time between the crime and the identification" was "fairly quick"—a matter of "minutes" rather than "hours or the next day or even weeks." (*Id.*, pp. 85-90.) According to the court, "the fact that [the victims were] under the influence of alcohol" did not "per se" "disqualif[y] them from making an appropriate show-up ID," especially because "most of the other" factors suggested that the show-up was not "unduly suggestive." (*Id.*, p. 89.)

On postconviction review, the state court rejected Smith's ineffective-assistance claim related to the motion to suppress:

> Defendant claims that counsel was ineffective for failing to properly argue a pretrial motion to suppress identification. Specifically, Defendant contends that, during the motion to suppress hearing, counsel should have impeached Paul Constable and Nick Bowers about the teardrop tattoos under the Defendant's eyes, the number of beers Paul Constable drank that night, and should have objected when the State revealed the DNA test results after the Court denied Defendant's motion to suppress. Defendant concludes that, if counsel had done these things, the Court would have found that the show-up identification was suggestive, the identification would have been suppressed, and the outcome of trial would have been different.

The State contends that counsel was not ineffective during the motion to suppress hearing. First, the State notes that the first time that the Defendant's teardrop tattoos were mentioned was during trial, when counsel impeached Mr. Bowers'[s] identification of the Defendant with the fact that Mr. Bowers did not see a teardrop tattoo. Mr. Bowers explained that he did [not] notice the tattoo during the robbery because the Defendant is African-American and the tattoo is dark. The State contends that, if this testimony had been introduced during the motion to suppress hearing, it would not have affected the outcome of the motion. Additionally, the State notes that Mr. Constable testified during a deposition that he remembered the Defendant because of his hair and face shape, not because of any tattoos. Mr. Constable also testified at trial that he could not tell whether the Defendant had tattoos or scars. The State concludes that there is no reasonable probability that the outcome of the motion to suppress hearing would have been different if counsel had impeached the victims' identification testimony with their failure to recognize the Defendant's face tattoos because Mr. Constable testified that he observed the Defendant for about fifteen minutes before the Defendant robbed him, [and] identified the Defendant by his hair, fa[ce] shape, and marijuana leaf jacket.

Second, the State notes that counsel extensively cross-examined Mr. Constable as to whether he had dr[u]nk too much to possibly identify the Defendant. The State contends that there is no reasonable probability that the outcome of the proceedings would have been different if counsel had conducted additional cross on this issue because the Court considered that Mr. Constable was impaired and still denied the motion to suppress.

Third, the State contends that counsel was not ineffective for failing to raise DNA as an issue during the motion to suppress hearing because the State had just received the DNA results that afternoon and disclosed as much after the Court denied the motion to suppress. The State contends that there was nothing for counsel to object to regarding this issue because the results excluded the codefendant [Moore] as the contributor of DNA on the marijuana leaf jacket, but were inconclusive as to whether the DNA present was the Defendant's DNA. The State concludes that there is no reasonable probability that the motion to suppress would have turned out differently if counsel had objected or known about the DNA results before the hearing because the DNA results had essentially no evidentiary value.

The Court is persuaded by the State's response and, having considered all of facts and circumstances of this case, finds that counsel was not deficient during the motion to suppress hearing on the grounds raised by the Defendant. The Court further finds that there is no reasonable probability that the outcome of the motion would have been different if counsel had raised the objections raised by the Defendant in the instant motion. Therefore, [this claim] is denied.

(Doc. 8-5, Ex. 44, pp. 9-10 (record citations omitted).)

The state court reasonably rejected Smith's ineffective-assistance claim. First, Smith failed to establish a "reasonable probability that the outcome of his suppression hearing . . . would have been different" if counsel had questioned the victims about his teardrop tattoos. *Waldrip v. Humphrey*, 532 F. App'x 878, 886 (11th Cir. 2013). As the state court noted, Constable and Bowers admitted at trial that they did not see Smith's teardrop tattoos. Even if counsel had been able to elicit this information during the suppression hearing, there is no basis to conclude that it would have led to a different outcome. In denying the motion to suppress, the trial court acknowledged that the victims gave only "general" descriptions of the suspects. (Doc. 8-2, Ex. 21, p. 89.) The court nevertheless found that the "general" nature of those descriptions was not "necessarily a problem," because (1) the victims were "sitting in a car" and thus could not "give a height and weight," and (2) both victims, "even the drunkest one," were "correct about . . . the [marijuana-leaf] sweatshirt." (*Id.*, pp. 86-87, 89.) Because the general nature of the victims' descriptions did not persuade the court to rule in favor of Smith, it is highly unlikely that additional information about the victims' inability to see the teardrop tattoos would have affected the outcome of the suppression hearing.

Second, Smith failed to establish ineffective assistance based on counsel's alleged failure to impeach Constable about how much alcohol he consumed on the night of the robbery. Smith argues that, at the suppression hearing, Constable "testified that he had only one [to] three beers." (Doc. 9, p. 22.) At this point, according to Smith, counsel should have impeached Constable with his deposition testimony, in which he stated that he had consumed "ten or eleven" drinks "through the whole night." (Doc. 8-2, Ex. 15, p. 35.) Again, Smith mischaracterizes the testimony Constable gave at the suppression hearing. Constable did not testify that he consumed only one to three beers. Rather, he stated that, at the first of two bars he visited, he had one to three beers. Constable was not asked—and thus did not testify to—the total number of drinks he consumed on the night of the incident. Accordingly, counsel was not ineffective for failing to impeach Constable with his deposition testimony. *See Bolender*, 16 F.3d at 1573 ("[I]t is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance.").

Even if counsel had been able to get Constable to testify at the suppression hearing that he consumed ten or more drinks, the ineffective-assistance claim would fail for lack of prejudice. In denying the motion to suppress, the trial court ruled that Constable's and Bowers's intoxication did not "per se" "disqualif[y] them from making an appropriate show-up ID," especially because "most of the other" factors suggested that the show-up was not "unduly suggestive." (Doc. 8-2, Ex. 21, p. 89.) Indeed, the court expressly rejected the argument that "the intoxication itself [was] of such a nature that it totally pollute[d] . . . all of the other circumstances and [gave] rise

27

to a substantial likelihood of irreparable misidentification." (*Id.*) Thus, the state postconviction court reasonably concluded that additional cross-examination concerning Smith's intoxication would not have made a difference "because the [trial court] considered that Mr. Constable was impaired and still denied the motion to suppress." (Doc. 8-5, Ex. 44, p. 10.)

Third, Smith failed to show that counsel was ineffective for failing to object to the prosecution's decision to reveal the DNA test results after the suppression hearing. As the state court explained, those results "excluded [Moore] as the contributor of DNA on the marijuana leaf jacket, but were inconclusive as to whether the DNA present was [Smith's]." (*Id.*) The DNA results were irrelevant to the issues presented by the motion to suppress, which concerned the reliability of the show-up identifications. Moreover, Smith fails to identify—and the Court cannot discern—any legal basis for the objection he believes counsel should have made. Therefore, the state court reasonably concluded that counsel was not ineffective for failing to object to the DNA results. *See Hollis v. United States*, 958 F.3d 1120, 1124 (11th Cir. 2020) ("[Petitioner's] counsel did not perform deficiently by failing to raise a meritless objection.").

In addition to the arguments addressed above, Smith also claimed that counsel should have argued that the identifications were unreliable because law enforcement "told both [] Constable and [] Bowers they had a suspect matching the description in custody before the show-up." (Doc. 9, p. 21.) Although Smith raised this argument in his state postconviction motion, the state court did not address the issue. "When a

state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits—but that presumption can in some limited circumstances be rebutted." *Johnson v. Williams*, 568 U.S. 289, 301 (2013). The presumption is rebutted when the evidence clearly shows that the state court "inadvertently overlooked" the federal claim. *Bester v. Warden*, 836 F.3d 1331, 1336 (11th Cir. 2016). In such a case, federal courts review the claim *de novo*. *Id.* at 1337.

Here, even assuming that *de novo* review applies, Smith has not shown that he is entitled to relief. *See Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010) ("Courts can . . . deny writs of habeas corpus under § 2254 by engaging in *de novo* review when it is unclear whether AEDPA deference applies, because a habeas petitioner will not be entitled to a writ of habeas corpus if his or her claim is rejected on *de novo* review.").

At the suppression hearing, Constable testified that before he was taken to the show-up, law enforcement said "they had obtained somebody that fit the description." (Doc. 8-2, Ex. 21, p. 20.) To be sure, a show-up procedure may be "unnecessarily suggestive" if law enforcement "suggest[s]" to the witness that the suspect "was involved in the crime." *Willis v. State*, 242 So. 3d 1195, 1198 (Fla. 1st DCA 2018). Here, however, "the vagueness of [law enforcement's] indications that the eyewitness would see someone who '[fit the description' renders this case distinguishable from those cases . . . in which Florida courts have reversed due to a substantial likelihood

of misidentification due to police conduct." *Alahad v. State*, 326 So. 3d 1142, 1147 (Fla. 4th DCA 2021), *review granted*, No. SC21-1450, 2022 WL 414249 (Fla. Feb. 11, 2022).

Moreover, even if law enforcement's statement that the suspect "fit the description" rendered the show-up unnecessarily suggestive, suppression would not necessarily follow. In such a situation, the trial court would consider "whether, under the totality of the circumstances, the identification process was reliable despite the unnecessarily suggestive procedure." *Willis*, 242 So. 3d at 1198. "Relevant factors for determining [] reliability include the opportunity of the witness to view the criminal at the time of the crime, the witness'[s] degree of attention, the accuracy of the witness'[s] prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Id.* Here, as explained above, the trial court weighed each of these factors and found that they did not require suppression of the identifications. (Doc. 8-2, Ex. 21, p. 90.) Thus, even if counsel had succeeded in convincing the trial court that the show-up was unnecessarily suggestive, there is not a "reasonable probability that the outcome of [the] suppression hearing . . . would have been different." *Waldrip*, 532 F. App'x at 886.

For all these reasons, Ground Four is denied.

## H.    Ground Five

Smith argues that trial counsel was ineffective for failing to object to the admission of the jail calls with his wife. He contends that these conversations were "clothed with the husband-wife privilege" and thus should have been excluded. (Doc.

9, p. 26.) Because counsel failed to object on this basis, the jury learned, among other things, that Smith's truck had been left near the scene of the robbery. Smith also contends that counsel should have objected, on marital privilege grounds, to his wife's testimony that he owned a "jacket with marijuana leaves" on it. (*Id.*) According to Smith, counsel's failure to seek exclusion of the jail calls and his wife's testimony prejudiced his defense.

The state court denied this claim:

Defendant claims that counsel was ineffective for failing to object to the introduction of evidence admitted against the husband-wife privilege. Specifically, Defendant contends that counsel should have objected when the State called Defendant's wife as a witness against him at trial and should have objected when the State admitted a jail call Defendant made to his wife while in custody at the jail. Defendant claims that the trial testimony from his wife and the jail call were privileged communication[s] pursuant to section 90.504, Florida Statutes. Thus, Defendant concludes that the outcome of trial would have been different if counsel had invoked the husband-wife privilege.

The State contends that counsel was not deficient for failing to object to the testimony from the Defendant's wife, Tessa Smith, because the husband-wife privilege did not apply to any of Tessa Smith's testimony. Under section 90.504, Florida Statutes, the spouse asserting the privilege may prevent the testifying spouse from testifying about communications which were intended to be made in confidence, but the State contends that jail calls are not confidential communications because inmates are well aware that the jail calls are recorded. *See* §§ 90.504, 90.507, Fla. Stat. (2013). The jail call recording which was introduced at trial contains a warning at the beginning of the call that the call will be recorded. Aside from the jail calls, Tessa Smith also testified about her observations of the Defendant before the robbery. The State contends that counsel was not deficient for failing to object to this testimony because observations are not communications [that can] invoke the husband-wife privilege. *See State v. Bolin*, 650 So. 2d 21, 23 (Fla. 1995).

The Court is persuaded by the State's response and finds that [this claim] fails both prongs of *Strickland*.

(Doc. 8-5, Ex. 44, pp. 10-11 (record citations omitted).)

The state court reasonably rejected Smith's ineffective-assistance claim. As noted above, a court "must defer to the state's construction of its own law when the validity of [an ineffective-assistance] claim . . . turns on state law." *Pinkney*, 876 F.3d at 1295. Here, Smith's ineffective-assistance claim hinges on a question of Florida law—specifically, whether the spousal privilege applied to the jail calls and the testimony Smith's wife gave at trial. The state court found that the privilege did not cover the calls or the testimony. This Court is bound by that determination. *See Herring*, 397 F.3d at 1354-55 ("The Florida Supreme Court already has told us how the issues would have been resolved under state law had [counsel] done what [the appellant] argues he should have done. . . . It is a fundamental principle that state courts are the final arbiters of state law, and federal courts should not second-guess them on such matters."). Accordingly, because the trial court would have overruled any objection based on the spousal privilege, counsel was not ineffective for failing to seek exclusion of the jail calls or Smith's wife's testimony. *See Brown v. Inch*, No. 20-80054-CIV, 2021 WL 3193234, at *7 (S.D. Fla. May 11, 2021) (rejecting *Strickland* claim based on counsel's failure to raise "marital privilege statute" because "the thrust of this question relies on the state court's interpretation of state law, which this court will not disrupt"), *adopted by* 2021 WL 3190905 (S.D. Fla. July 28, 2021). Ground Five is denied.[7]

---

[7] Although the amended petition is unclear on this point, Smith appears to contend that the trial court violated his due process rights by allowing the jury to hear the jail calls and his wife's testimony about the marijuana-leaf hoodie. "[F]ederal courts will not generally review state trial courts' evidentiary

## I.      Ground Six

Smith contends that trial counsel rendered ineffective assistance by failing to object and move for a mistrial when Moore, his codefendant, testified at trial and "placed himself and [Smith] at the scene." (Doc. 9, p. 29.) Smith claims that "all through pre-trial and trial proceedings," his defense was "misidentification." (*Id.*) Thus, Moore's trial testimony "completely nullified [Smith's] entire defense." (*Id.*) Smith acknowledges that, before trial began, counsel unsuccessfully opposed the prosecution's motion to try Smith and Moore together. Nevertheless, Smith faults counsel for "fail[ing] to object . . . when [Moore] began [] testifying." (*Id.*) In Smith's view, counsel should have argued that "the defenses were inconsistent and [] Moore's testimony defeated [Smith's] entire defense." (*Id.*, p. 30.) Additionally, Smith appears to argue that Moore's testimony violated *Bruton v. United States*, 391 U.S. 123 (1968), and that counsel was ineffective for failing to raise this issue as well.

The state court rejected Smith's ineffective-assistance claim:

> Defendant contends that counsel should have objected to his codefendant's testimony. Defendant was tried with his codefendant, over counsel's objection, after the Court granted the State's motion for joinder. Defendant contends that his codefendant's testimony prejudiced his ability to receive a fair trial because the codefendant testified that the Defendant was at the scene of the incident, which undermined Defendant's misidentification defense. Defendant alleges that counsel, upon hearing the codefendant's testimony, should have objected and filed a motion for mistrial.

---

determinations." *Taylor v. Sec'y, Fla. Dep't of Corr.*, 760 F.3d 1284, 1295 (11th Cir. 2014). Indeed, courts "will not grant federal habeas corpus relief based on an evidentiary ruling unless the ruling affects the fundamental fairness of the trial." *Mills v. Singletary*, 161 F.3d 1273, 1289 (11th Cir. 1998). Smith has not shown that the admission of the challenged evidence "so infused the trial with unfairness as to deny due process of law." *Taylor*, 760 F.3d at 1295.

The State contends that counsel was not deficient for failing to object or ask for a mistrial when the codefendant testified that he was at the scene of the robbery with the Defendant because the facts of the case did not support a misidentification defense for all of the reasons raised in the State's responses to Claims Two (A) and Four. Moreover, the State contends that counsel was not deficient for failing to move for a mistrial because there was no *Bruton* issue and no indication prior to trial that there would be a *Bruton* issue.

The Court is persuaded by the State's response and finds that [this claim] fails both prongs of *Strickland*. Because there were no *Bruton* issues and the codefendant's testimony was actually helpful to the Defendant, there is no reasonable probability that the Court would have granted an objection or motion for mistrial on the grounds raised by the Defendant. Therefore, [this claim] is denied.

(Doc. 8-5, Ex. 44, pp. 11-12 (record citations omitted).)

The state court reasonably rejected this claim. First, the court correctly concluded that Moore's testimony did not present a *Bruton* issue. "The Supreme Court held in *Bruton* that post-arrest statements made by *nontestifying* codefendants that facially incriminate other defendants are inadmissible into evidence because such statements violate the other defendants' Sixth Amendment rights to confront and cross-examine adverse witnesses." *United States v. Williamson*, 339 F.3d 1295, 1302 (11th Cir. 2003) (emphasis added). Thus, "*Bruton* is only violated where a statement is offered of a *non-testifying* codefendant." *United States v. Horton*, 522 F. App'x 456, 461 (11th Cir. 2013). Because Moore testified at trial and was available for cross-examination, his testimony did not violate *Bruton*, and counsel was not ineffective for

34

failing to raise a *Bruton* argument.[8] *See Houston v. United States*, No. 8:09-cr-379-WJC-TBM, 2014 WL 585025, at *7 (M.D. Fla. Feb. 12, 2014) ("*Bruton* . . . is not violated when, as here, a co-defendant testifies at trial and is available for cross-examination.").

Second, the state court reasonably concluded that Moore's testimony did not prejudice Smith. The misidentification defense was extremely weak. The record reflects that (1) both victims identified Smith as one of the robbers shortly after the incident, (2) Smith was found hiding behind a house near the scene of the crime, (3) the marijuana-leaf hoodie that both victims saw Smith wearing was found in the backyard where Smith was apprehended, (4) Smith's wife admitted that he owned several marijuana-leaf hoodies, and (5) during a post-arrest jail call, Smith asked his wife to retrieve his vehicle, which was parked near the scene of the robbery. In short, overwhelming evidence placed Smith at the scene of the crime. Thus, Smith cannot show a "reasonable probability" that, had counsel objected to Moore's testimony, "the outcome at trial would have been different." *Reed*, 767 F.3d at 1261.

Furthermore, any prejudice that may have resulted from Moore's testimony was cured by the trial court's cautionary instructions to the jury. When "mutually antagonistic defenses" develop at trial, "the best solution . . . is not severance, but for the trial judge to issue proper limiting instructions." *United States v. Blankenship*, 382 F.3d 1110, 1125 n.27 (11th Cir. 2004). Indeed, "cautionary instructions to the jury to consider the evidence separately are presumed to guard adequately against prejudice."

---

[8] To the extent Smith brings a standalone claim based on the alleged *Bruton* violation, it fails for the same reason.

*United States v. Francis*, 131 F.3d 1452, 1459 (11th Cir. 1997). Here, the trial court instructed the jury that "[t]he defendants have been tried together; however, you must consider each defendant and the evidence applicable to him separately. You may find one or both guilty or not guilty. However, your verdict as to one defendant must not affect your verdict as to the other." (Doc. 8-3, Ex. 33, p. 677.) These cautionary instructions were sufficient to cure any prejudice potentially caused by Moore's testimony. *See, e.g.*, *Houston*, 2014 WL 585025, at *8 (holding that "counsel's failure to move for severance or raise the issue on appeal" did not prejudice petitioner because "the Court instructed jury to consider each defendant and [the] evidence against them separately").

In sum, because the state court reasonably rejected Smith's ineffective-assistance claim, Ground Six is denied.[9]

## J.    Ground Seven

Smith contends that trial counsel provided ineffective assistance by "fail[ing] to explain what a mistrial was." (Doc. 9, p. 32.) According to Smith, during the State's cross-examination of Moore, the prosecutor "made a comment concerning [Moore's] right to remain silent." (*Id.*) Moore's counsel objected, prompting "discussions by the court on granting a mistrial and two [] colloquies on the record about whether [Smith]

---

[9] Smith asserts, without elaboration, that Moore's testimony violated his "right to present a complete defense." (Doc. 9, p. 29.) Even assuming that admission of this testimony was erroneous, Smith would still need to show that the error "resulted in 'actual prejudice' to him under the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619 (1993)." *Trepal*, 684 F.3d at 1110. As explained above, the prosecution presented overwhelming evidence of Smith's guilt. "Errors are harmless" where, as here, "evidence of guilt is overwhelming." *Guzman v. Sec'y, Dep't of Corr.*, 663 F.3d 1336, 1355 (11th Cir. 2011).

wanted a mistrial." (*Id.*) Smith also spoke to his counsel during a recess, but counsel allegedly "didn't explain what a mistrial was" and failed to inform Smith that "he would get a new trial without his co-defendant [Moore]." (*Id.*, p. 33.) After Smith indicated on the record that he did not want a mistrial, the court stated that the trial would proceed. Smith maintains that he would have asked for a mistrial had his counsel "explained . . . that he would get a new trial without his co-defendant." (*Id.*)

The state court rejected this claim:

> The Defendant claims that counsel was ineffective for failing to explain to him what a mistrial is. The Defendant contends that, during trial, the State inappropriately commented on his codefendant's right to remain silent. The Defendant contends that, had counsel explained what a mistrial is, the Defendant would not have waived a motion for mistrial. The Court notes that whether to file a motion for mistrial is a decision for trial counsel and that there is no reasonable probability that explaining to the Defendant what a mistrial is would have changed the outcome of the trial because it would not have changed counsel's decision whether to pursue a motion for mistrial. Therefore, it seems that the Defendant is alleging that counsel was ineffective for failing to seek a mistrial when the State commented on the codefendant's right to remain silent.

> The State contends that the record refutes the Defendant's claim because the Court took a fifteen-minute recess during trial specifically so that the Defendant could discuss the prospect of filing a motion for a mistrial. Counsel specifically put on the record that the Defendant decided, against counsel's advice, to proceed with the trial and not seek a mistrial. The Court conducted a colloquy with the Defendant, who indicated that he did not want a mistrial, and counsel made a point to the put on the record that proceeding with trial was a decision made against his advice. The State notes that this was not the kind of case where the codefendants were disagreeing as to whether to seek a mistrial, as both attorneys wanted to move for a mistrial and both codefendants wanted to proceed with trial.

> The Court is persuaded by the State's response and is not persuaded that the Defendant decided to not move for a mistrial because he did not know

> what a mistrial is. The Court gave the parties ample time to discuss whether to pursue a motion for mistrial and both attorneys put on record that their clients wanted to proceed against sound legal advice. It is disingenuous to allege that no one explained or asked what a mistrial is during that conversation. Therefore, [this claim] is denied.

(Doc. 8-5, Ex. 44, pp. 12-13 (record citations omitted).)

The state court reasonably rejected Smith's ineffective-assistance claim. During cross-examination of Moore, the prosecutor asked the following question: "They take you into custody. You don't tell police your version at that point, or the state attorney's office?" (Doc. 8-3, Ex. 33, p. 543.) Moore's counsel objected on the grounds that the prosecutor had "just commented on my client's right to remain silent." (*Id.*, p. 544.) She indicated that she "need[ed] to have a discussion with my client and see if he wants . . . me to move for mistrial." (*Id.*) Smith's counsel joined the objection. The court indicated that it would "wait until the end of [Moore's] cross-examination" to address the matter. (*Id.*, p. 545.)

Once the examination ended, the court took a fifteen-minute recess. Following the recess, Moore's counsel informed the court that she had "advised" her client to "ask for a mistrial," but he "want[ed] to proceed forward." (*Id.*, p. 555.) Smith's counsel likewise indicated that "[w]e want to go forward as well," clarifying that this decision was "against [counsel's] advice." (*Id.*) The court stated that, if Smith or Moore wished to proceed, "we[] [would] go forward," but that if either defendant "want[ed] another trial," the court would have "a tougher decision to make." (*Id.*, p. 556.) After confirming with Moore that he wished to proceed with trial, the court held the following colloquy with Smith:

THE COURT: All right. Mr. Smith, same thing for you? You've talked to [defense counsel]; is that right?

DEFENDANT SMITH: Yes, sir.

THE COURT: And you want to move forward and—and have the jury make a decision in this case; is that correct?

DEFENDANT SMITH: Yes, sir.

THE COURT: All right.

[DEFENSE COUNSEL]: Judge, I want to—I want it made clear on the record that we've had discussions just—I don't know. I forget what time we broke.

THE COURT: We broke about 25 to 30 minutes ago. I gave you guys 15. Then you came back. You talked. We came back in. You wanted more time, and then I gave you more time to talk to the clients. So you've had about a half hour to digest it all, right?

[DEFENSE COUNSEL]: Not half an hour. We've had about 15 or so minutes of that time, again, discussions. And then I want to make it very clear on the record that my advice to Mr. Smith was that I felt that he should go for the mistrial. He does not wish to do that, so I want to make it very clear on the record.

THE COURT: All right. And that's what you're telling us, right, Mr. Smith? You want to proceed?

DEFENDANT SMITH: Yes, sir.

(*Id.*, pp. 558-59.)

Faced with this record, the state postconviction court reasonably concluded that (1) the trial court "gave the parties ample time to discuss whether to pursue a motion for mistrial and both attorneys put on record that their clients wanted to proceed against sound legal advice"; and (2) it was "disingenuous to allege that no one explained or asked what a mistrial is during that conversation." (Doc. 8-5, Ex. 44, p.

13.) Smith has not shown by "clear and convincing evidence" that these factual findings were erroneous. 28 U.S.C. § 2254(e)(1); *see also Green v. Sec'y, Dep't of Corr.*, 28 F.4th 1089, 1128 (11th Cir. 2022) ("[W]e must bear in mind that AEDPA establishes a presumption that the state court's findings of fact are correct, and only 'clear and convincing evidence' can rebut that presumption." (quoting 28 U.S.C. § 2254(e)(1))).

Having reasonably determined that counsel did in fact "explain what a mistrial was," the state court correctly rejected Smith's ineffective-assistance claim. To be sure, Smith also faults counsel for failing to inform him that "he would get a new trial without his co-defendant [Moore]." (Doc. 9, p. 33.) But counsel could not guarantee that, if he moved for a mistrial, the court would grant the motion as to Smith alone rather than as to both Smith and Moore. Nor could counsel promise that, in the event of a mistrial as to both defendants, Smith would be retried separately from Moore. Under Florida law, "the decision on whether to grant a motion to sever is generally within the trial court's discretion." *Miller v. State*, 756 So. 2d 1072, 1072 (Fla. 4th DCA 2000). Notably, some courts have held that "[i]t is not an abuse of discretion to deny severance even when defendants rely on inconsistent or antagonistic defenses, or when one defendant blames the other for the offense." *Wright v. State*, 739 So. 2d 1230, 1233 (Fla. 1st DCA 1999). For these reasons, counsel cannot be deemed ineffective for failing to advise Smith that he would be retried separately from Moore in the event of a mistrial. Ground Seven is denied.

## K.      Ground Eight

Smith contends that trial counsel was ineffective for failing to "get[] [him] a competency hearing on mental health issues." (Doc. 9, p. 35.) According to Smith, he was "forced to make decisions concerning pre-trials, trials[,] and mistrials but at no time was [he] competent." (*Id.*) Moreover, counsel allegedly knew that Smith "was under the care of mental health doctors and taking mind-altering medications within the Pinellas County Jail during and after trial." (*Id.*) Yet, Smith alleges, counsel failed to "take the proper steps [to obtain] a competency hearing." (*Id.*)

The state court denied this claim:

Defendant claims that counsel was ineffective for failing to seek a competency evaluation. Defendant contends that he has a history of mental illness and was taking psychotropic medications to treat auditory hallucinations while he was in jail awaiting trial. Defendant contends that the side effects of the medications caused him to be confused and that counsel told the Defendant he would seek a competency evaluation before trial, but counsel failed to do so.

To make a sufficient allegation of ineffective assistance of counsel for failing to investigate competency, a defendant must: (1) establish the deficiency prong of *Strickland* by alleging "sufficient facts showing that a reasonably competent attorney would have questioned competence to proceed" and (2) demonstrate prejudice by showing that there is a reasonable probability that the defendant would have been found incompetent. *See Thompson v. State*, 88 So. 3d 312, 318 (Fla. 4th DCA 2012). Pursuant to Florida Rule of Criminal Procedure 3.210, a motion for a competency evaluation by defense counsel must be made "in good faith and on reasonable grounds to believe that the defendant is incompetent to proceed" and "[t]o the extent that it does not invade the lawyer-client privilege, the motion shall contain a recital of the specific observations of and conversations with the defendant that have formed the basis for the motion." *See* Fla. R. Crim. P. 3.210(b)(l). However, counsel is not bound to seek a competency evaluation when there is no

evidence calling the defendant's competency into question. *See Groover v. State*, 574 So. 2d 97, 99 (Fla. 1991).

The State contends that counsel was not deficient for failing to seek a competency evaluation because the record reflects that counsel would not have had a good faith basis upon which to question the Defendant's competency to proceed. Additionally, the State notes that the Defendant behaved appropriately and communicated coherently in court at several pretrial conferences and did not display any behavior which would indicate a need for a competency evaluation.

The Court is persuaded by the State's response and finds that the Defendant is not entitled to relief. The Defendant's mental illness history or need to take psychotropic medications is not, by itself, grounds to seek a competency hearing. *See Thompson*, 88 So. 3d at 319. Moreover, the record reflects that the Defendant was not confused prior to trial [so as] to raise any concerns about the Defendant's competency. Counsel diligently pursued bond hearings in an effort to have the Defendant released so that he could care for his daughter. The Defendant was able to interact intelligently and appropriately with the Court at several pretrial hearings, including telling the Court that he had a conflict with one of the proposed trial dates because he wished to attend a custody hearing in family court that same day. The Defendant displayed his understanding of the proceedings and responded appropriately to the Court's inquiry during pretrial hearings and two trial colloquies. Thus, the record refutes the Defendant's claim that counsel should have asked for a competency hearing. Moreover, considering the facts and circumstances of this case, there is no reasonable probability that the Defendant would have been found incompetent on the grounds alleged in the instant motion. Therefore, [this claim] is denied.

(Doc. 8-5, Ex. 44, pp. 13-15 (record citations omitted).)

The state court reasonably rejected Smith's ineffective-assistance claim. "[T]o prove the prejudice prong of his ineffective assistance of counsel claim, [Smith] must demonstrate that there is a reasonable probability that he was actually tried, convicted and sentenced while he was not in fact competent to stand trial." *Collier v. Fla. Dep't of Corr. Sec'y*, 622 F. App'x 887, 888 (11th Cir. 2015). The test for determining

competence to stand trial is "whether a criminal defendant [1] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and [2] whether he has a rational as well as factual understanding of the proceedings against him." *Drope v. Missouri*, 420 U.S. 162, 171 (1975).

Smith failed to establish a reasonable probability that he was incompetent to stand trial. He claims that, "at the time of trial," he was taking "mind-altering, memory loss, forgetful, psychotropic medications," including Haldol and Risperdal. (Doc. 9, p. 36.) But "[t]reatment with anti-psychotic drugs does not *per se* render a defendant incompetent to stand trial." *Sheley v. Singletary*, 955 F.2d 1434, 1438 (11th Cir. 1992). Indeed, "[a]bsent evidence of" "a present inability to assist counsel or understand the charges," a petitioner cannot "show incompetence to stand trial" merely by pointing to "evidence of low intelligence, mental deficiency, bizarre, volatile, or irrational behavior, or the use of anti-psychotic drugs." *Pardo v. Sec'y, Fla. Dep't of Corr.*, 587 F.3d 1093, 1101 (11th Cir. 2009). Here, Smith presented no evidence that his medications "caused him to be confused and to lack understanding of the proceedings under the legal standard of competence." *Sheley*, 955 F.2d at 1438.

In addition, having carefully reviewed the pretrial and trial transcripts in this case, the Court agrees with the state court's assessment that Smith (1) "was able to interact intelligently and appropriately with the [trial court] at several pretrial hearings," and (2) "displayed his understanding of the proceedings and responded appropriately to the [trial court's] inquiry during pretrial hearings and two trial colloquies." (Doc. 8-5, Ex. 44, p. 14.) Smith's behavior during these proceedings

"affirmatively demonstrate[s] that [he] had the present ability to consult with his lawyer with a reasonable degree of rational understanding, and had a rational as well as factual understanding of the proceedings against him." *Collier*, 622 F. App'x at 888.

Accordingly, the state court reasonably concluded that Smith failed to establish prejudice from his counsel's failure to investigate his competency and seek a competency hearing. Thus, Ground Eight is denied.[10]

### L.    Ground Ten[11]

Smith argues that trial counsel was ineffective for failing to "file a motion to dismiss" based on "the illegal arrest conducted by the St. Petersburg [P]olice [D]epartment on the night of the incident." (Doc. 9, pp. 43-44.) According to Smith, the officers were "justified in detaining [him] to question him or investigate his role in the robbery," but they acted unlawfully by "mov[ing] [him] from one initial vicinity [to] another for a show-up [identification]." (*Id.*, p. 44.) Smith maintains that because he "never gave officers consent to be transported from the initial vicinity of apprehension," his "rights and due process [were] violated." (*Id.*, p. 45.) Thus, according to Smith, "counsel['s] performance was deficient for not moving for a dismissal" on this basis. (*Id.*)

---

[10] Smith vaguely asserts that he "has been ruled incompetent by many doctors in 2006 before and still now after trial." (Doc. 9, p. 36.) Smith provides no evidence to support this conclusory assertion. "[C]onclusory allegations unsupported by specifics" are insufficient to warrant habeas relief. *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991).

[11] The Court addresses Ground Ten before Ground Nine because the latter claim is one of cumulative error.

Respondent correctly contends that this claim is untimely. Smith asserted Ground Ten for the first time in his amended petition, which was filed on June 22, 2020. (Doc. 9.) The amended petition is subject to AEDPA's one-year statute of limitations. 28 U.S.C. § 2244(d). The limitations period runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). The period is tolled for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." *Id.* § 2244(d)(2).

On July 8, 2015, the state appellate court affirmed Smith's conviction without written opinion. (Doc. 8-4, Ex. 39.) The state supreme court did not have jurisdiction to review the unelaborated decision. *Jenkins v. State*, 385 So. 2d 1356, 1360 (Fla. 1980) (citing Fla. Const. art. V, § 3(b)(3)). This was a clear constitutional bar to higher state court review. *Pugh v. Smith*, 465 F.3d 1295, 1299 (11th Cir. 2006). Although Smith could have sought further review in the United States Supreme Court, he did not do so. The time to seek that review expired 90 days later—or October 6, 2015. Sup. Ct. R. 13.1; Sup. Ct. R. 30.1. The next day, the limitations period started to run. 28 U.S.C. § 2244(d)(1)(A); Fed. R. Civ. P. 6(a)(1)(A).

The limitations period continued to run until August 1, 2016, when Smith filed a Rule 3.850 motion for postconviction relief. (Doc. 8-4, Ex. 40.) At that point, 299 days had run on the limitations period. The Rule 3.850 motion and the subsequent appeal tolled the limitations period until April 1, 2020, when the appellate mandate

issued. (Doc. 8-5, Ex. 49; *see also Nyland v. Moore*, 216 F.3d 1264, 1267 (11th Cir. 2000).) Accordingly, Smith had until June 8, 2020, to file his federal habeas petition. Although he timely filed his initial petition on May 6, 2020, he did not file his amended petition until June 22, 2020—two weeks after the expiration of the limitations period. (Docs. 1, 9.)

Because the amended petition was filed outside the limitations period, the claims in the amended petition "are barred unless they 'relate back'" to the claims in the original, timely petition. *Davenport v. United States*, 217 F.3d 1341, 1344 (11th Cir. 2000). A new claim relates back to a prior claim only if they are "tied to a common core of operative facts." *Mayle v. Felix*, 545 U.S. 644, 664 (2005). "[T]he untimely claim must have more in common with the timely filed claim than the mere fact that they arose out of the same trial and sentencing proceedings." *Davenport*, 217 F.3d at 1344. "Instead, in order to relate back, the untimely claim must have arisen from the same set of facts as the timely filed claim, not from separate conduct or a separate occurrence in both time and type." *Id.*

Here, Grounds One through Nine relate back because they were raised in the initial, timely petition. Ground Ten does not relate back, however, because it was not raised in the initial petition, and it does not share "a common core of operative facts" with any of the claims in that petition. *Mayle*, 545 U.S. at 664. Although Smith raised several ineffective-assistance claims in the initial petition, he did not fault counsel for failing to seek dismissal based on the allegedly illegal arrest. The law is clear that "[a] claim of ineffective assistance of counsel in a timely filed [petition] does not mean that

any claims of ineffective assistance of counsel that are not timely raised necessarily relate back." *Thomas v. United States*, No. 16-14955-B, 2018 WL 11301192, at *3 (11th Cir. Nov. 19, 2018). Indeed, "[n]ew specific claims of ineffective assistance of counsel do not relate back to an original general claim of ineffective assistance of counsel." *Keeler v. Jones*, No. 15-60333-CIV, 2016 WL 11688066, at *6 (S.D. Fla. Jan. 12, 2016), *adopted by* 2018 WL 10798972 (S.D. Fla. Mar. 15, 2018).

Because Ground Ten does not relate back to the initial petition, it is untimely. Ground Ten must therefore be dismissed unless equitable tolling applies or Smith sets forth a viable claim of actual innocence. A petitioner is "entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010). Smith does not argue that he meets these requirements. Nor does he establish a claim of "actual innocence," which requires a petitioner to "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Accordingly, Ground Ten must be dismissed as time barred.

Even if Ground Ten were timely, Smith would not be entitled to relief because he did not exhaust the claim in state court. "[E]xhaustion of state remedies requires that petitioners fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995). "To provide the State with

the necessary 'opportunity,' the prisoner must fairly present his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 32 (2004).

At no point in the state-court proceedings did Smith raise Ground Ten. Smith cannot return to state court to present this claim in a second, untimely postconviction motion. *See* Fla. R. Crim. P. 3.850(b) (imposing two-year window of time to file motion for post-conviction relief). As a result, Ground Ten is procedurally defaulted. *See Smith*, 256 F.3d at 1138 ("If the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established."). Smith does not argue that an exception applies to overcome the default. Thus, even if it were timely, Ground Ten would be barred from federal habeas review.

### M.   Ground Nine

Finally, Smith contends that he "is entitled to a new trial due to the cumulative effect of [the alleged] constitutional errors" in this case. (Doc. 9, p. 42.) The state court rejected this claim, finding no cumulative error because all of Smith's other claims were "without merit." (Doc. 8-5, Ex. 44, p. 13.) That conclusion was correct. "Under the cumulative-error doctrine, a sufficient agglomeration of otherwise harmless or nonreversible errors can warrant reversal if their aggregate effect is to deprive the defendant of a fair trial." *Insignares v. Sec'y, Fla. Dep't of Corr.*, 755 F.3d 1273, 1284 (11th

Cir. 2014). A cumulative-error claim "must fail," however, where none of the "individual claims of error" has "any merit." *Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1132 (11th Cir. 2012). Here, there are no individual errors to accumulate, so Smith's cumulative-error claim necessarily fails. *See Otero v. Sec'y, Dep't of Corr.*, No. 8:19-cv-39-SDM-AEP, 2022 WL 4095069, at *8 (M.D. Fla. Sept. 7, 2022) ("Because ground one is procedurally barred from federal review and ground two lacks merit, [petitioner] proves no error to accumulate to show cumulative prejudicial effect."). Ground Nine is denied.

It is therefore **ORDERED** that Smith's amended petition (Doc. 9) is **DENIED**. The **CLERK** is directed to enter judgment against Smith and to **CLOSE** this case.[12]

### Certificate of Appealability
### and Leave to Appeal *In Forma Pauperis* Denied

It is further **ORDERED** that Smith is not entitled to a certificate of appealability ("COA"). A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a COA must first issue. *Id.* "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To obtain a COA, Smith must show that reasonable jurists would find debatable both (1) the merits of

---

[12] Smith seeks an evidentiary hearing on his claims. The Court determines that an evidentiary hearing is not warranted. *See Schriro*, 550 U.S. at 474 ("[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."); *Landers v. Warden*, 776 F.3d 1288, 1295 (11th Cir. 2015) ("[B]efore a habeas petitioner may be entitled to a federal evidentiary hearing on a claim that has been adjudicated by the state court, he must demonstrate a clearly established federal-law error or an unreasonable determination of fact on the part of the state court, based solely on the state court record.").

the underlying claims and (2) the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Smith has not made the requisite showing. Finally, because Smith is not entitled to a COA, he is not entitled to appeal *in forma pauperis*.

**ORDERED** in Tampa, Florida, on May 15, 2023.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE